**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JASON V.,[1] | ) |
| | ) |
| Plaintiff, | )    Case No. 1:20-CV-04992 |
| | ) |
| v. | )    Judge Sharon Johnson Coleman |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMDORANDUM OPINION AND ORDER**

Plaintiff Jason V. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Jason, through counsel, moves for summary judgment seeking reversal of the Administrative Law Judge's ("ALJ") decision. The Commissioner responded with a motion for summary judgment in support of affirming the ALJ's decision. For the following reasons, the Court denies Jason's motion [35], grants the Commissioner's motion [43], and affirms the ruling of the ALJ.

**Background**

Jason filed an application for benefits on January 19, 2016, alleging a disability onset date of January 2, 2011. His application was denied initially on April 28, 2016, and denied upon reconsideration on July 22, 2016. Jason then requested a hearing before an ALJ, which was held on January 18, 2018. On April 4, 2018, the ALJ issued a decision denying Jason's application. The

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, the Court refers to the plaintiff by his first name and the first initial of his last name, or only by his first name.
[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d).

Appeals Council then declined review, leaving the ALJ's April 2018 decision as the Commissioner's final decision reviewable by this Court under 42 U.S.C. § 405(g).

**Judicial Standard of Review**

Judicial review of an ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards in reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Surprise v. Saul*, 968 F.3d 658, 661–62 (7th Cir. 2020) (citation omitted). An ALJ need not discuss every piece of evidence but must "build a logical bridge from evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citation omitted). "Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge." *Sheila W. v. Saul*, 395 F. Supp. 3d 974, 978 (N.D. Ill. 2019) (Cole, J.) (citation omitted). Though a federal court's review of an ALJ's decision is deferential, and courts do not reweigh the evidence or substitute their judgment for that of the ALJ, the ALJ's decision will be remanded if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). But federal courts do not reweigh the evidence or substitute their judgment for that of the ALJ. *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022).

**Disability Determination Standard**

A person is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security

Administration has set forth a five-step sequential evaluation for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). The evaluation considers whether the claimant (1) has engaged in substantial gainful activity during the period for which he claims disability; (2) has a severe impairment or combination of impairments; (3) has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) is capable of performing any work in the national economy. *Id.*

**ALJ's Disability Determination**

The ALJ analyzed Jason's claim in accordance with the Social Security Administration's five-step sequential evaluation process. The ALJ found at step one that Jason had not engaged in substantial gainful activity since January 2, 2015. At step two, the ALJ concluded that Jason had the severe impairment of anxiety disorder ("GAD").[3] At step three, the ALJ determined that Jason did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. However, the ALJ found that Jason's impairment caused moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. The ALJ also found that Jason had a mild limitation in adapting or managing himself.

The ALJ then determined that Jason had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: "[Jason] can understand, remember, and carry out simple instructions and make simple work-related

---

[3] The ALJ also noted that: (1) Jason has hypertension, which the ALJ found to be non-severe; and (2) Jason has alleged non-medically determinable impairments including major depressive disorder, IBS, lumbar and cervical spine herniations, tinnitus, and angina. (Dkt. 27-1, at 47–48.)

decisions." (Dkt. 27-1, at 49.) The ALJ additionally found that Jason "can tolerate occasional changes in a routine work setting, occasional interactions with supervisors and co-workers, and no interaction with the general public." (*Id.*, at 48.) The ALJ went on to summarize Jason's allegations and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that [Jason's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (*Id.*, at 51.) The ALJ noted that Jason had several hospital visits and medication checks where Jason was "feeling ok" and his "anxiety was stable." (*Id.*, at 50–51.) The ALJ said that, despite Jason's multiple visits to Mercy Hospital for anxiety-related complaints, the records show his mental status examinations during these visits "were largely normal." (*Id.*, at 51.)

The ALJ also considered a two-page letter detailing some of Jason's treatment and medication history provided by Lorene Cameron, a Qualified Mental Health Professional at The Link and Option Center, Inc. (*Id.*, at 711.). However, the ALJ did not give Cameron's decision any controlling weight because the ALJ did not find Cameron to be an acceptable medical source.[4] (*Id.* at 51.) The ALJ further remarked that Cameron's statement lacked an opinion on Jason's ability to perform and engage in work-related activities, but decided to consider Cameron's statement as a summary of the history of Jason's treatment and diagnoses. (*Id.*) Finally, the ALJ considered the findings made by state-agency medical physicians who reviewed the medical record and opined that

---

[4] The ALJ did not provide more reasoning as to why Cameron was not an acceptable medical source in this section of her decision. But, as discussed below, the Social Security Regulations determine who is considered an "acceptable medical source."

Jason's claims of disability were not supported by the record. (*Id.*) The ALJ found these opinions to be generally consistent with evidence of record. (*Id.*)

At step four, the ALJ concluded that Jason was unable to perform his past relevant work as a boilermaker. (*Id.*, at 52.) At step five, the ALJ relied on the testimony of the Vocational Expert ("VE") who said that an individual with Jason's restrictions could perform work as a cleaner, a packager, and a machine feeder. Based on the VE's testimony and considering Jason's age, education, work experience, and RFC, the ALJ concluded that there are jobs in significant numbers in the national economy that Jason can perform, leading to a finding that he is not disabled under the Social Security Act. (*Id.*)

**Analysis**

Jason contends that the ALJ erred in concluding that: (1) Jason's only severe impairment was GAD when he has been diagnosed with other impairments; (2) he did not have a sufficiently severe impairment or combination of impairments to meet the requirements outlined in 20 C.F.R. § 404, Subpt. P, App. 1; and (3) he had the RFC to perform a full range of work with certain limitations.

<u>Severe Impairments</u>

The ALJ did not err by concluding that Jason did not have the severe impairments of posttraumatic stress disorder ("PTSD"), major depressive disorder ("MDD"), hypertension, irritable bowel syndrome ("IBS"), lumbar and cervical spine herniations, tinnitus, and angina. Jason provides little to no evidence from a medically acceptable source to establish those diagnoses as medically determinable impairments. The ALJ's holding is grounded in substantial evidence and the ALJ made a logical bridge from the evidence to her conclusion.

To show that he has a severe impairment, a plaintiff must show that he suffers from a medically determinable condition that significantly limits his physical or mental ability to do basic

work activities and that the condition is expected to persist for at least twelve months. *See* 20 C.F.R. §§ 404.1508; 404.1520(c). Jason contends that the ALJ failed to properly analyze his impairment from PTSD or MDD, despite having a diagnosis for each disorder. Jason's argument is unconvincing. In support of his motion, he blanketly cites to 47 pages of the record, which he contends is "overwhelming evidence" that he suffered from PTSD and MDD, in addition to GAD. (Dkt. 36, at 9.) This does not address the ALJ's reasoning for her finding—that no evidence from an *acceptable medical source* evidenced the existence of a medically determinable impairment from PTSD or MDD. (*See* Dkt. 27-1, at 48.) In reply, Jason contends that the ALJ ignored pages of his medical records (Dkt. 27-1, at 610–681), and therefore committed reversable error. The ALJ, however, did consider these records in coming to her conclusion. (Dkt. 27-1, at 51.) Furthermore, the records mention as part of his medical history that Jason came to the medical center with diagnoses of PTSD and MDD. (*Id.*, at 678.) But the notes later indicate that he does not meet the criteria for PTSD. (*Id.*, at 660.) Either way, these notes do not equate to the "medically acceptable clinical and laboratory diagnostic techniques" necessary to establish a severe impairment. 20 C.F.R. § 416.921; *see also Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (upholding ALJ's decision to give little weight to a report that contained only symptoms and diagnoses rather than "a statement that reflects a judgment about the nature and the severity of the impairment" and the claimant's limitations). The Court therefore finds no error in the ALJ's determination at step two.

Jason also argues that the ALJ erred in finding his hypertension was non-severe. He asserts that his emergency hospital visit records show the uncontrollable, and therefore severe, nature of his hypertension. (Dkt. 27-1, at 481, 509, 527 (showing multiple hospital visits in which Jason complained of hypertension).) The ALJ, however, relied on notes from those same hospital visits, which state that Jason's hypertension was asymptomatic. (*Id.*, at 47; 481; 509; 527.) Therefore, the

condition could not affect Jason's ability to do basic work activities and the ALJ's conclusion is substantially supported by the evidence.

Jason also contends that the ALJ should have found that his IBS, lumbar and cervical spine herniations, tinnitus, and angina were medically determinable impairments. Jason devotes one conclusory sentence to this cause in his motion, arguing that the ALJ ignored the "medical evidence related to" these diagnoses. (Dkt. 36, at 9.) He fails to explain what evidence presented at hearing showed that these conditions meaningfully restricted his ability to work. *See, e.g., Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) (Cole, J.) ("A diagnos[i]s, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing."). Thus, the Court does not disagree with the ALJ's conclusion that Jason failed to provide "credible evidence that these conditions are the result of any anatomical abnormality that is demonstrable by medically acceptable clinical or laboratory diagnostic techniques." (Dkt. 27-1, at 48.)

Finally, at the end of his motion for summary judgment, Jason contends that the Appeals Council improperly declined to review his submission of new evidence that had not been presented to the ALJ. "The Social Security Administration regulations require that [the Appeals Council] evaluate 'new and material evidence' in determining whether a case qualifies for review." *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). Jason argues that the evidence bolsters his claim that he is severely impaired in the areas of PTSD, MDD, and IBS. (Dkt. 36, at 15.) Specifically, he presented portions of 2012 deposition testimony by Dr. Anne Costakis and 2006 to 2011 medical records from Mercy Medical and the University of Chicago Medicine. The Appeals Council declined to consider the deposition testimony, finding that it was "not material" or "relevant to [Jason's] claim for disability." (Dkt. 27-1, at 26.) Likewise, the medical records were not considered because the

evidence did "not show a reasonable probability that it would change the outcome of the decision."
(*Id.*)

While Jason argues that this evidence would have been "highly relevant" to his disability
claim, he makes no argument that the evidence was either new or material. Records are new if "they
were 'not in existence or available to the claimant at the time of the administrative proceeding.'"
*Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th
Cir. 1997)). The records Jason seeks to be reviewed are from 2006 to 2012, far before the January
18, 2018 hearing or the March 30, 2018 issuance of the ALJ's decision. Jason submits no argument
as to why these records could not have been presented during the administrative proceeding. As a
result, the Court does not remand for consideration of these records.

Listed Impairments

Next, Jason argues that the ALJ erred by finding that his severe impairment due to GAD (or
a combination of the other impairments he believes are severe) did not meet the criteria of one of
the Listed Impairments in 20 C.F.R. § 404, Subpt. P, App. 1. If a claimant shows that his severe
impairment is among, or medically equivalent to, the Listed Impairments, he has demonstrated his
impairment is presumptively disabling for the purpose of Step 3 of the analysis. *See Jeske v. Saul*, 955
F.3d 583, 588 (7th Cir. 2020). The ALJ analyzed only whether GAD met the criteria under Listing
12.06 because she did not find the other conditions severe at step two. The Commissioner argues
that Jason's brief neglects to discuss whether he met the criteria in Paragraph A of Listing 12.06,
thus dooming his motion. (Dkt. 44, at 6.) But the ALJ likewise did not discuss Paragraph A in her
decision, apparently assuming that Jason had met the criteria for purposes of the order. Because the
Court upholds the ALJ's ruling that Jason does not meet the Paragraph B or C criteria, the Court

need not assess whether Jason meets the Paragraph A criteria. *See* 20 C.F.R. § 404, Subpt. P, App. 1, 12.06 (claimant must satisfy the requirements of Paragraphs A and B or Paragraphs A and C).

The ALJ based her conclusions on the Listing criteria in part on the state-agency medical physicians' findings. (*See* Dkt. 27-1, at 48.) Those physicians concluded that Jason did not meet or equal a Listing, which the ALJ found was supported by and consistent with the overall medical record. "An ALJ may rely on a reviewing physician's assessment [of whether a claimant's impairments meet a presumptive disability listing] unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 F. App'x 406, 409–10 (7th Cir. 2020) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). Because Jason does not argue that later evidence "changed the picture," the ALJ properly relied on the state-agency consultants' findings.

Jason nonetheless argues that the ALJ improperly found that he did not meet the Paragraph B criteria. Under Paragraph B, a mental impairment must result in at least one extreme or two marked limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. The ALJ concluded that Jason did not have one extreme or two marked limitations in these areas and therefore was not presumptively disabled. "When evaluating whether an impairment is presumptively disabled under a listing, the ALJ 'must discuss the listing by name and offer more than a perfunctory analysis of the listing.'" *Jeske*, 955 F.3d at 588 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

First, Jason contends that he had more than a moderate limitation with respect to understanding, remembering, or applying information as well as concentrating, persisting, or maintaining pace. (Dkt. 36, at 10.) Jason maintains that the ALJ wholly ignored reports of Jason's

short attention span and difficulty keeping track of bills. (Dkt. 27-1, at 404–405.) As to understanding, remembering, or applying information, the ALJ cited Jason's function report and other medical evidence, which included Jason's self-reporting of his ability to remember, understand, and carry out instructions. (*Id.*, at 48.) She then weighed this with the evidence that Jason did not need reminders to take medication and could handle his finances. (*Id.*) The ALJ based her decision on Jason's limitation for concentrating, persisting, or maintaining pace in part on his presentation at the hearing. Jason was focused, fully engaged, and responded to questions, in contrast to his self-reports that he had difficulties concentrating and maintaining his attention. (*Id.* at 49.) This reasoning, in consideration with the ALJ's reliance on the reviewing physicians' assessment, is much more than a "perfunctory analysis" of the listing. *See Jeske*, 955 F.3d at 588. Accordingly, the ALJ did not err in ruling that Jason has a moderate limitation in these areas.

The ALJ's conclusion that Jason possesses a moderate limitation in interacting with others was similarly proper. The ALJ relied on Jason's self-reported evidence that he did not often spend time with others or participate in many social functions. (Dkt. 27-1, at 48.) The record also showed that Jason's treatment providers observed that he had no difficulties in getting along with staff or other individuals in treatment, and that he was cooperative and demonstrated a fair mood. (*Id.*) In weighing this evidence, the ALJ properly found only a moderate limitation in interacting with others. Jason argues that this conclusion contradicts the ALJ's finding that Jason "should have no interactions with the public." (Dkt. 27-1, at 49.) The ALJ's holding about Jason's non-exertional limitations is not at odds with this conclusion. The limitation applied only to interactions with the public—the ALJ concluded that other interactions (such as with supervisors and coworkers) are permissible. Therefore, the ALJ's finding was based on substantial evidence and not in error.

Next, Jason argues that the ALJ erred in finding a mild limitation in adapting and managing oneself because the ALJ improperly weighed the factors of Jason's personal care and put too much weight on Jason's appearance during the hearing. (Dkt. 36, at 11.) The ALJ concluded that Jason did not report significant issues in performing personal care, but Jason maintains that the record shows that he cared little for what he wore and did not shave often. (Dkt. 27-1, at 404–05.) Contrary to Jason's argument, these same records show that he practiced other good hygiene habits, such as regular bathing and getting haircuts. In addition, the ALJ also relied on Jason's mental health records—which showed that he had good hygiene and was appropriately dressed during visits—and his appearance at the hearing. (*Id.*, at 49.) In sum, the ALJ's conclusion that Jason did not have one extreme or two marked limitations under the Paragraph B criteria was appropriately supported by substantial evidence and there was a logical bridge between the evidence and the ALJ's conclusion.

In the alternative, Jason argues that the ALJ erroneously held that he did not meet the Paragraph C criteria, which requires that the claimant have a "serious and persistent" mental disorder shown by a medically documented history of the disorder for at least two years and evidence of (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder"; and (2) the "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. § 404, Subpt. P, App. 1, 12.06. Said otherwise, "the Paragraph C criteria address the situation where symptoms are not necessarily currently extreme but are 'serious and persistent,' and 'could worsen if the person had to significantly change their daily routine.'" *Robert S. v. Kijakazi*, No. 1:20-CV-02235-MG-RLY, 2021 WL 5979361, at *6

11

(S.D. Ind. Dec. 16, 2021) (quoting *Carl D. v. Saul*, No. 1:20-CV-47-JVB, 2021 WL 363599, at *2 (N.D. Ind. Feb. 3, 2021)).

It is true that the ALJ's decision as to the Paragraph C criteria is brief, concluding only that "the record fails to document the existence of" the criteria. (Dkt. 27-1, at 49.) But the ALJ's discussion under subsection five substantiates her decision. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020)) ("[N]othing [ ] prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision."). In that section, the ALJ confirms that she relied upon the findings by the state-agency physicians who concluded that Jason did not meet the Paragraph C criteria or otherwise meet or equal a Listing. (Dkt. 27-1, at 51, 165, 191.) Again, Jason does not argue that another medical professional contradicted these opinions. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) ("Because no other physician contradicted the [state-agency physicians'] two opinions, the ALJ did not err in accepting them."); *see also Massaglia*, 805 F. App'x at 409–10 ("Opinions of state-agency consultants may constitute substantial evidence on the issue of whether a claimant's impairments meet a presumptive disability listing."). Thus, the ALJ properly relied on state-agency physicians' opinions.

Jason argues that he satisfies the Paragraph C criteria because he started and continued treatment for his GAD in 2011 and Cameron's letter indicates that he had continuing treatment through 2016. (Dkt. 36, at 11–12.) His argument fails to address the necessary component of "marginal adjustment." Jason does not argue that his "symptom[s] arose from changes in [his] environment or new demands, as paragraph C requires." *Aida U. v. Kijakazi*, No. 20-cv-5669, 2022 WL 4109717, at *8 (N.D. Ill. Sept. 8, 2022) (Cummings, J.). Because Jason does not show that he would otherwise meet the Paragraph C criteria, the Court will not reverse the ALJ's decision.

*Sosinksi v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020) ("[E]ven if the ALJ does not offer such an analysis, we do not reverse if the claimant fails to show that he meets the criteria for that listing[.]").

<u>Residual Functional Capacity</u>

Because the ALJ found that Jason was not presumptively disabled under the Listings, the ALJ assessed Jason's RFC and found that he had the RFC to perform a full range of work, with some limitations, as described above. Jason argues that this conclusion does not logically follow from the evidence in the record. First, Jason maintains that the ALJ discounted his testimony about the difficulties he experienced as a result of his GAD, PTSD, and MDD. But the ALJ discredited his testimony because she found it at odds with the medical evidence. The Court cannot overturn the ALJ's credibility determination unless it is "patently wrong." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). The ALJ's observations of Jason at trial in conjunction with the discrepancies between his testimony and the medical record are sufficient to support her decision to discredit Jason's statements about his GAD symptoms. *Id.* (upholding ALJ's credibility determination in light of the ALJ's observations of the claimant at hearing and claimant's testimony contradicting the record).

Jason next contends that the ALJ's RFC assessment failed to credit statements made by his family members. (Dkt. 36, at 10.) Jason asserts that his family member's statement about the effects of Jason's other conditions, including IBS and angina, was not considered. (Dkt. 27-1, at 445–51.) But the record indicates that Jason's attorney filled out the statement. The family member's name and contact information appear only in the section requesting the "name of someone (other than your doctors) we can contact who knows about your medical conditions…" (*Id.*, at 445.) Jason's nephew also provided a statement about Jason's deteriorating condition and stated that Jason has trouble concentrating, completing tasks, and understanding. (*Id.*, at 429–36.) The ALJ's opinion

13

does not specifically discuss whether or how much weight she gave to the nephew's statement. Jason contends that the ALJ's failure to discuss the nephew's statement was error, but neglects to cite any legal authority for the proposition. To the contrary, "an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Because the ALJ grounded her opinion in the reputable medical evidence, there was no error.

The ALJ correctly concluded that Lorene Cameron was not an acceptable medical source whose opinion should be entitled to controlling weight. Cameron was not a licensed psychologist or other acceptable source per the governing regulations. 20 C.F.R. § 404.1502(a). Even still, the ALJ did consider the statement and concluded that it did not provide opinions on Jason's ability to perform and engage in work-related activities. (Dkt. 27-1, at 51.) Jason additionally argues that the ALJ ignored his dependence on Valium, which made him drowsy and could affect his ability to work. (Dkt. 36, at 13.) But the record shows that the ALJ was aware of and considered his Valium use in her opinion. (Dkt. 27-1, at 50–51.)

Ability to Perform Work

Jason asserts that the ALJ relied on the flawed opinion of the VE to conclude that Jason can perform a broad range of jobs. (Dkt. 36, at 11–15.) During the hearing, the ALJ questioned the VE regarding work in the national economy under a set of hypothetical circumstances. Jason contends that the ALJ failed to ask the VE to specifically consider Jason's moderate limitations in understanding, remembering, and applying information; interaction with others; and maintaining concentration, persistence, and pace. The hypothetical posted to the VE "must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (cleaned up).

14

But "[a]s a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement." *Id.* The question must simply ensure that the VE understands the claimant's limitations in order to narrow the answer to include those jobs the claimant could perform. *Id.*

The ALJ's hypothetical appropriately captured Jason's limitations that were supported by the record. The question included that the hypothetical individual could "understand, remember, and carry out *simple* instructions and make *simple* work-related decisions," thereby taking into account Jason's moderate limitation in understanding, remembering, and applying information. (Dkt. 27-1, at 75 (emphasis added).) Likewise, the ALJ captured Jason's limitations with interacting with others and concentration, persistence, or pace by narrowing the question to apply to an individual who "can tolerate occasional changes in a routine work setting," and "can tolerate occasional interactions with supervisors and coworkers [but not] interaction[s] with the pub[l]ic." (*Id.*, at 75–76.) Further, because Jason has not explained what work restrictions would address his limitations, any alleged error is harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

The ALJ's question about off-task time also did not create reversible error. Although Jason mentions the off-task time question in his motion, he addresses the issue in earnest for the first time in reply. (*Compare* Dkt. 36, at 15 *with* Dkt. 48, at 3–4.) Jason contends that the ALJ erred when she asked the VE about the amount of off-task time and absences generally tolerated in the workplace but did not incorporate the VE's opinion into her ruling. In support, Jason cites cases in which an ALJ asked the VE about whether work exists in the national economy for someone who is off-task twenty percent of the time and failed to discuss the limitation in their opinion. *See Jacob D. v. Kijakazi*, No. 20-cv-0554, 2021 WL 3674610, at *5 (N.D. Ill. Aug. 19, 2021) (Cox, J.); *Kukec v. Berryhill*, No. 16 cv 9805, 2017 WL 5191872, at *3–4 (N.D. Ill. Nov. 9, 2017) (Cox, J.). In *Jacob D. v.*

*Kijakazi*, the judge found reversible error because the question suggested that the ALJ made unspoken conclusions about the claimant's potential off-task time. *Jacob D.*, 2021 WL 3674610, at *4 ("It appears the ALJ had reason to believe Plaintiff might be off task at least 20% of the time, or there would be no reason to have posed this hypothetical to the VE."). This case is distinguishable. Jason does not argue or put forward evidence that he required a certain amount of off-task time or absences related to his GAD. In fact, the record shows that Jason was not significantly limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Dkt. 27-1, at 167, 194.) Therefore, though "the ALJ's questions were unnecessary and create some confusion, they do not rise to the level of reversible error." *Kurtti v. Berryhill*, No. 18-CV-873, 2019 WL 977886, at *5–6 (E.D. Wis. Feb. 27, 2019); *see also Victoria R. v. Kijakazi*, No. 20-cv-04444, 2022 WL 3543231, at *12 (N.D. Ill. Aug. 18, 2022) (Cummings, J.) ("[B]ecause Claimant did not have any medically documented limitation specifying an amount of time she would be off task, the ALJ did not err by failing to discuss the [VE's] response to the hypothetical concerning off-task time when formulating Claimant's RFC.").

**Conclusion**

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment. The Court affirms the ALJ's decision.


IT IS SO ORDERED.

Date: 8/17/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge